[NOT YET SCHEDULED FOR ORAL ARGUMENT]

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CENTER FOR TAXPAYER RIGHTS, et al., <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> INTERNAL REVENUE SERVICE, et al., <br><br> Defendants-Appellants. | Case No. 26-5006 |

## NOTICE OF INDICATIVE RULING

Pursuant to Federal Rule of Appellate Procedure 12.1(a), Plaintiffs-Appellees Center for Taxpayer Rights et al. provide this notice of the attached indicative ruling issued by the district court. The background regarding this indicative ruling is set forth in Plaintiffs' pending motion to stay proceedings in this Court.

The district court has reaffirmed that, if this case were remanded for a limited purpose, the court would allow the parties to supplement the record to include the Declaration of Dottie Romo, Dkt. No. 66-1. Ex. A, at 2; *accord* Minute Order (Feb. 13, 2026). The court further

indicated that "Plaintiffs' request for discovery raises a substantial issue that the Court would prefer to decide only if the court appeals agrees that it would be useful." Ex. A, at 2. Among other things, the court observed that recent factual developments had raised "some concern regarding the completeness of the administrative record" filed in this case. *Id.* at 11-12.

Because the district court has stated that it would grant Plaintiffs' motion in part and that the remainder of the motion "raises a substantial issue," this Court may take an appropriate action under Rule 12.1(b). Unless the Court directs otherwise, Plaintiffs intend to move for a remand to permit the district court to exercise jurisdiction.

Date: February 26, 2026

Respectfully submitted,

*/s/ Simon C. Brewer*
Simon C. Brewer
Daniel A. McGrath
Madeline H. Gitomer
Steven Y. Bressler
Robin F. Thurston

Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
sbrewer@democracyforward.org

*Counsel for Plaintiffs-Appellees*

2

# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR TAXPAYER RIGHTS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> INTERNAL REVENUE SERVICE, *et al.*, <br><br> Defendants. | Civil Action No. 25-457 (CKK) |

## MEMORANDUM OPINION & ORDER
(February 26, 2026)

This matter has been stayed pending Defendants' appeal of the Court's [53] Order granting Plaintiffs' [30] Motion for Stay, or in the alternative for Preliminary Injunction. Recently, Defendants filed a [66] Supplemental Declaration from the IRS's Chief Risk and Control Officer to "modify certain prior statements made by Defendants in this case based on information obtained by Defendants subsequent to those statements." Through this Declaration, Defendants admit that, on August 7, 2025, the IRS disclosed confidential taxpayer addresses to ICE in violation of Section 6103(i)(2) of the Internal Revenue Code.

Plaintiffs have since filed a [69] Motion for an Indicative Ruling under Federal Rule of Civil Procedure 62.1. Plaintiffs ask the Court to indicate that, if it had jurisdiction, it would (i) supplement the record on appeal with Defendants' [66] Supplemental Declaration, and (ii) grant Plaintiffs limited, expedited discovery into the information disclosed in Defendants' [66] Supplemental Declaration. In the alternative, Plaintiffs ask the Court to indicate that their motion "raises a substantial issue" meriting further consideration, such that the D.C. Circuit may take an appropriate action under Federal Rule of Appellate Procedure 12.1(b).

1

Upon consideration of the parties' submissions, the relevant legal authority, and the entire record, the Court shall **INDICATE THAT**, if it had jurisdiction, it would supplement the record on appeal with Defendants' [66] Supplemental Declaration, and **FURTHER INDICATE THAT** Plaintiffs' request for discovery raises a substantial issue that the Court would prefer to decide only if the court of appeals agrees that it would be useful to its decision on Defendants' appeal of the Court's [53] Order granting Plaintiffs' [30] Motion for Stay, or in the alternative for Preliminary Injunction.

## I. BACKGROUND

### A. Plaintiffs' Motion for Preliminary Relief and Defendants' Appeal

Plaintiffs brought this action seeking to enjoin the IRS from implementing a policy of broadly sharing confidential return information with other federal agencies. *See* Am. Compl., Dkt. No. 20. Plaintiffs then moved for preliminary relief on a narrower subset of issues. Specifically, Plaintiffs filed a Motion for Stay, or in the alternative for Preliminary Injunction, arguing that the IRS had violated the APA and Internal Revenue Code ("IRC") by adopting and implementing a policy of disclosing taxpayer addresses to Immigration and Customs Enforcement ("ICE") in bulk under Internal Revenue Code Section 6103(i)(2). *See* Dkt. No. 30.

On November 21, 2025, the Court granted Plaintiffs' motion for preliminary relief. Order, Dkt. No. 53; Mem. Op., Dkt. No. 54. The Court concluded that the IRS had acted arbitrarily and capriciously in adopting and implementing "a policy of disclosing the confidential address information of tens of thousands of taxpayers to ICE under Section 6103(i)(2) of the Internal Revenue Code, in reliance on representations from ICE that the addresses are relevant to and will be used for immigration-related criminal investigations and proceedings, even when ICE identifies only a single ICE employee (or a small number of ICE employees) as the employee(s) 'personally and directly engaged' in each of the tens of thousands of relevant criminal investigations or

2

Case 1:25-cv-00457-CKK   Document 74   Filed 02/26/26   Page 3 of 13
USCA Case #26-5006   Document #2161152   Filed: 02/26/2026   Page 6 of 16

proceedings." Mem. Op., at 38–9 (defining this policy as the "Address-Sharing Policy"); *see also* Order, at 1. The Court also concluded that the IRS likely committed several violations of IRC Section 6103(i)(2) when, pursuant to the Address-Sharing Policy, it disclosed the last known addresses of approximately 47,000 taxpayers to ICE on August 7, 2025. Order, at 1–2. Accordingly, the Court stayed the Address-Sharing Policy and preliminarily enjoined the IRS and Department of the Treasury from disclosing any return information to DHS or any of its component agencies pursuant to Section 6103(i)(2), except in strict compliance with the requirements of that Section. *Id*. at 2. The Court also ordered Defendants to notify ICE and DHS of the ruling, and to notify the Court of any future requests from DHS or any of its component agencies for return information pursuant to Section 6103(i)(2). *Id*. at 2–3.

Defendants appealed the Court's Order and moved to stay proceedings pending appeal. *See* Am. Notice of Appeal, Dkt. No. 61; Mot. for Stay, Dkt. No. 64. Plaintiffs consented to Defendants' requested stay on two conditions: *first*, that during the stay, Defendants would inform Plaintiffs with 3 days advance notice before the IRS (1) created a new Application Programming Interface ("API") that shared return information or taxpayer return information with agencies outside the IRS, or (2) used an API created after February 2025 to share return information or taxpayer return information with agencies outside the IRS; and *second*, that either party could lift the stay at any time. Mot. for Stay ¶ 7. The Court stayed proceedings subject to the above conditions on January 21, 2026. Dkt. No. 65.

### B. Defendants' Supplemental Declaration

On February 11, 2026, Defendants filed a supplemental declaration from the IRS's Chief Risk and Control Officer, Dottie A. Romo, to "modify certain prior statements made by Defendants in this case based on information obtained by Defendants subsequent to those statements." *See* Romo Decl. ¶ 3, Dkt. No. 66 (the "Romo Declaration"). Defendants do not identify the "prior

3

statements" the Romo Declaration serves to "modify." But the import of the Romo Declaration is clear. Through the Romo Declaration, Defendants admit that, on August 7, 2025, the IRS violated the IRC in at least one respect by disclosing confidential taxpayer addresses to ICE in response to requests from ICE that were either legally "incomplete or insufficient[]." Romo Decl. ¶ 13.

Before fulfilling an agency's request for confidential return information under IRC Section 6103(i)(2), the IRS must confirm that the agency's request "meets" several "requirements." 26 U.S.C. § 6103(i)(2)(A). Relevant here is the requirement that the requesting agency provide the IRS with "the name and address of the taxpayer with respect to whom the requested return information relates." *Id*. § 6103(i)(2)(B)(i).

The Court has already determined that the IRS likely violated this provision of the IRC. In granting Plaintiffs' motion for preliminary relief, the Court noted that, in many cases, the IRS disclosed taxpayer addresses to ICE without first confirming that ICE's request for that taxpayer included the "address of the taxpayer." The Court reached this conclusion because, according to counsel for Defendants, if ICE's request to the IRS "provided a name and taxpayer identification number for an individual that 'matched up' with the name and taxpayer identification number that the IRS had in its system, then the IRS disclosed the last known address for that individual without confirming whether the address ICE provided for that individual matched an address the IRS had in its system." Mem. Op., at 56 (quoting H'rg Tr., Dkt. No. 38 at 28:3–4). Counsel for Defendants estimated that this was the procedure for "around 39,000" of the 47,289 addresses that IRS provided to ICE. *Id*. (quoting H'rg Tr., at 29:2–5).

The Romo Declaration reaffirms the above description of the IRS's failure to confirm that ICE provided the "address of the taxpayer" before disclosing last known addresses to ICE. Romo explains that the IRS first ran a "procedure" (presumably an automated one) to "verify" that the

4

"ICE-supplied address field" in the "Datafile" containing ICE's 1.28 million requests for addresses "included a five-digit, nine-digit, or a five-digit dash (-) four-digit number (as proxies for a zip code)." Romo Decl. ¶ 6. After this initial round of filtering,[1] the IRS ran one of two "mutually exclusive" computerized processes to determine whether the ICE-supplied information "matched" the IRS's records and thus, it appears, warranted making disclosure. *Id*. ¶ 8. If ICE's request included a social security number ("SSN") for the relevant taxpayer, then the IRS disclosed the taxpayer's last known address to ICE "when the ICE-supplied first name, last name, and SSN fields matched with a name and associated TIN in IRS's records." *Id*. ¶ 8(a). Under this process—referred to as "TIN Matching"—the IRS did not make any inquiry into the ICE-supplied "address of the taxpayer" beyond its initial automated check for a zip code proxy. *Id*. If ICE's request did not include a taxpayer's SSN, then, and only then, did the IRS confirm that "the ICE-supplied first name, last name, and address fields matched with a name and associated address in IRS's records." *Id*. ¶ 8(b).

Of the 47,289 taxpayer addresses that the IRS disclosed to ICE through these two mutually exclusive matching processes, 90.3% (i.e., 42,695 addresses) were matched by TIN Matching, while the other 9.7% (i.e., 4,594 addresses) were matched by Address Matching. *Id*. ¶ 10. Accordingly, the IRS violated the IRC approximately 42,695 times by disclosing last known taxpayer addresses to ICE through TIN Matching without confirming that ICE's request set forth the "address of the taxpayer with respect to whom the requested return information relate[d]." 26 U.S.C. § 6103(i)(2)(B)(i).

The Romo Declaration also reveals that the IRS's failure to confirm that certain ICE requests included the "address of the taxpayer" led the IRS to disclose the last known addresses

---

[1] Romo informs the Court that this process filtered out approximately 2.6% of ICE's 1.28 million requests. Romo Decl. ¶ 7.

for thousands of taxpayers in situations where ICE provided an address in its request that was "either incomplete or insufficient[]." Romo Decl. ¶ 13. In other words, the IRS not only failed to ensure that ICE's request for confidential taxpayer address information met the statutory requirements, but this failure led the IRS to disclose confidential taxpayer addresses to ICE in situations where ICE's request for that information was patently deficient. The IRS, for example, disclosed to ICE the last known addresses for taxpayers in situations where ICE supplied an "address of the taxpayer" in its request that contained "language indicating that the address was not complete, such as 'Failed to Provide,' 'Unknown Address,' or 'NA NA.'" Romo Decl. ¶ 13. The IRS also disclosed to ICE the last known addresses of taxpayers where the ICE-supplied address was missing essential information, such as "a street name or street number." *Id*. Still more, the IRS disclosed to ICE the last known addresses of taxpayers where the ICE-supplied address "referred to, described, or named specific locations"—examples of which are "jails, detention facilities, or prisons"—and "the corresponding city, state, and zip code" for those locations, but did not include "the street names and street numbers where the buildings or facilities are located."[2] *Id*. ¶ 14.

The IRS has initiated a review of "each of the 47,289 requests for which IRS provided a last known address" and currently estimates that less than 5% of these requests are deficient. *Id*. ¶¶ 12, 16. So far, the IRS has identified deficiencies "only in conjunction with the TIN Matching process," not the Address Matching process. *Id*. ¶ 17. The IRS admits that the TIN Matching process was "not designed to identify the additional types of data insufficiencies" the IRS has since

---

[2] The IRS appears to assume that "specific locations" such as "jails, detention facilities, or prisons" would qualify as the "address of the taxpayer" under the relevant provision of the IRC. But there is reason to believe that assumption is not warranted. For starters, an individual's "address" is generally understood to be the place where they live. And in defining the term "taxpayer identity," Section 6103 refers to a taxpayer's "mailing address." 26 U.S.C. § 6103(b)(6).

6

identified in the IRS-supplied address fields. *Id.* ¶ 15. This admits the obvious. As the Court explained in granting Plaintiffs' motion for preliminary relief and reiterated above, the TIN Matching process did not involve a comparison between the ICE-supplied addresses and the addresses in IRS's system. The only address-check for the requests that went through the TIN Matching process was the initial check to verify that the ICE-supplied address field included a "five-digit, nine-digit, or a five-digit dash (-) four-digit number" as a *proxy* for a zip code. *Id.* ¶ 6. A zip code is not an address, and a zip code proxy, as the IRS would define it, might as well be a set of random numbers. For instance, ICE could have submitted a request with an "address" like, "Don't Care 12345," or, "00000," and still received a taxpayer's address through the IRS's TIN Matching process.

Defendants represent that the Department of Treasury identified the issues detailed in the Romo Declaration on January 23, 2026. Romo Decl. ¶ 18. Defendants explain that Treasury then "notified DHS and requested DHS's assistance in promptly taking steps to remediate the matter consistent with federal law and the MOU, including by taking all appropriate steps to prevent the disclosure or dissemination, and to ensure appropriate disposal, of any data provided to ICE by IRS based on incomplete or insufficient address information." *Id.* ¶ 18. DHS and ICE "have confirmed to Treasury and IRS that they will comply with federal law and the MOU" in addressing this issue, and that, "pending the resolution of a related injunction enjoining the MOU, DHS and ICE will not inspect, view, use, copy, distribute, rely on, or otherwise act on any return information that has been obtained from or disclosed by IRS pursuant to the MOU." *Id.* ¶ 19 (citing *CEDC v. Bessent*, 25-cv-12822, ECF 75 (Memorandum and Order)) ("Should the posture of litigation related to the MOU change, DHS and ICE have confirmed to Treasury and IRS that they will

7

continue to work to ensure that any further actions taken pursuant to the MOU are consistent with federal law.").

### C. Plaintiffs' Motion for Indicative Ruling

Plaintiffs have filed a motion under Federal Rule of Civil Procedure 62.1 asking the Court to indicate that, if it had jurisdiction, it would (i) "supplement the record on appeal with the Romo Declaration" and (ii) "grant Plaintiffs limited, expedited discovery" into the information disclosed in the Romo Declaration. Pls.' Mot., at 12. In the alternative, Plaintiffs ask the Court to indicate that their motion "raises a substantial issue meriting [] further consideration, such that the D.C. Circuit may take an appropriate action under Federal Rule of Appellate Procedure 12.1(b)." *Id*.

Defendants do not object to supplementing the record on appeal with the Romo Declaration. *See* Defs.' Opp'n, Dkt. No. 70. The Court has therefore already indicated that it would supplement the record on appeal with the Romo Declaration if it had jurisdiction. *See* Min. Order (Feb. 13, 2026).

Defendants, however, do object to Plaintiffs' request for limited, expedited discovery, arguing that discovery is not appropriate in this APA case and that, even if it were, expedited discovery is not warranted. *See* Defs.' Opp'n. Plaintiffs reply by arguing that the Romo Declaration reveals that the record in this matter—including the administrative record—is incomplete, and that further discovery is needed to define the contours of the IRS's Address-Sharing policy and to support the Court's finding that the IRS's adoption of the Address-Sharing Policy was arbitrary and capricious. *See* Pls.' Mot.; Pls.' Reply, Dkt. No. 72.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 62.1

Rule 62.1 provides, in relevant part, that if a "timely motion" is made for relief that a district court "lacks authority to grant because of an appeal that has been docketed and is pending," the

8

district court may: (1) "defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a).

When faced with a Rule 62.1 motion presenting "complex issues that require extensive litigation and that may either be mooted or be presented in a different context by decision of the issues raised on appeal," a district court "may prefer to state that the motion raises a substantial issue, and to state the reasons why it prefers to decide only if the court of appeals agrees that it would be useful to decide the motion before decision of the pending appeal." Fed. R. Civ. P. 62.1 advisory committee notes ("The district court is not bound to grant the motion after stating that the motion raises a substantial issue; further proceedings on remand may show that the motion ought not be granted.").

### B. Discovery in APA Cases

The APA limits judicial review to the administrative record except (i) when there has been "a strong showing of bad faith or improper behavior," or (ii) when the record is "so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (internal quotation marks omitted) (citing *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971)). Regarding the second exception, the D.C. Circuit has suggested that discovery may be appropriate in some instances to "ascertain the contours" of a policy that is not acknowledged by an agency. *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (citing *Venetian Casino Resort*, L.L.C. v. EEOC, 530 F.3d 925, 928 (D.C. Cir. 2008)).

## III. ANALYSIS

As a general rule, the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam). Plaintiffs do not argue for discovery outside of the context of amending the record on appeal, nor do they argue that the Court somehow already has jurisdiction over the discovery issue. The Court therefore limits its analysis to the issue of whether it would grant Plaintiffs' request for discovery to amend the record on appeal should it have jurisdiction to do so.

For the reasons stated below, the Court determines that Plaintiffs' request for discovery to supplement the record on appeal "raises a substantial issue." Fed. R. Civ. P. 62.1. Although discovery is generally not permitted in APA cases, Plaintiffs have raised a genuine question as to whether an exception to this general rule should apply. Accordingly, because Plaintiffs' request for discovery "present[s] complex issues that require extensive litigation and that may either be mooted or be presented in a different context by decision of the issues raised on appeal," the Court determines that it raises a "substantial issue" that the Court would "prefer[] to decide only if the court of appeals agrees that it would be useful to decide" before decision of the pending appeal. Fed. R. Civ. P. 62.1 advisory committee notes.

\* \* \*

Plaintiffs face an uphill battle in requesting discovery. Generally, the "task of the reviewing court" in an APA case "is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–744 (1985). The "focal point" of the Court's review should be "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Hearth, Patio & Barbecue Ass'n v.*

10

*Env't Prot. Agency*, 11 F.4th 791, 802 (D.C. Cir. 2021) (it is "black-letter administrative law" that "a reviewing court should have before it neither more nor less information than did the agency when it made its decision") (citations omitted). Here, Defendants have presented the Court with a certified administrative record that provides at least some contemporaneous documentation of the IRS's implementation of the Address-Sharing Policy. *See* Dkt. No. 48. The presumption is that Plaintiffs cannot supplement this record through discovery. *Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991).

But the presumption against discovery is not a prohibition. In the absence of formal administrative findings, discovery may be appropriate where (i) there has been "a strong showing of bad faith or improper behavior," or where (ii) the record is "so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation P'ship*, 616 F.3d at 514 (citations omitted).

Plaintiffs argue that Defendants have exhibited signs of "bad faith or improper behavior" warranting discovery. *Id*. Defendants knew of the IRS's patently unlawful disclosures to ICE by at least January 23, 2026. Romo Decl. ¶ 18. Defendants informed DHS right away, but they waited nearly three weeks to inform Plaintiffs and the Court. *See id*. On the same day that Defendants learned of and informed DHS about the IRS's unlawful disclosures, the sole ICE official with access to the taxpayer information disclosed by the IRS on August 7, 2025, gave two additional ICE officials access to the information "for the purpose of allowing [them] to create an adequate system of safeguards for the data as required under" the IRC. Pls.' Mot., at 7–8 (quoting Fitzgerald Decl. ¶ 5, Dkt. No. 78-1). As Plaintiffs point out, these factual developments undercut many representations made by Defendants during this litigation. *Id*.; Pls.' Reply at 4 (providing list of representations). There appears to be, at the very least, a disconnect between the agency clients and counsel, which leads to some concern regarding the completeness of the administrative

11

record. Considering, however, that "the purpose of Rule 62.1 is to promote judicial efficiency and fairness," *Amarin Pharms. Ireland Ltd. v. Food & Drug Admin.*, 139 F. Supp. 3d 437, 447 (D.D.C. 2015), the Court determines that the best exercise of its discretion is to refrain determining whether Plaintiffs have made a "strong showing" of bad faith or improper behavior in the narrow context of Defendants' appeal unless "the court of appeals agrees that it would be useful to decide the [issue] before decision of the pending appeal," Fed. R. Civ. P. 62.1 advisory committee notes.

Plaintiffs also argue that discovery is needed to ensure "effective judicial review" because it is necessary to "ascertain the contours" of the IRS's unacknowledged Address-Sharing Policy. Pls.' Reply, at 2 (citing *Hisp. Affs. Project*, 901 F.3d at 388; *Venetian Casino*, 530 F.3d at 928). Defendants have argued that the Address-Sharing Policy does not exist and that any sharing of confidential return information with ICE has been made pursuant to the terms of the MOU, which simply restates the requirements of the IRC. *See* Pls.' Reply, at 4 (listing some of Defendants' arguments). The Romo Declaration shows, however, that Defendants were not simply following the MOU, which leads Plaintiffs to question whether they were following some other policy-defining material. Because the court of appeals is in a better position to determine the usefulness of Plaintiffs' requested discovery in ruling on Defendants' appeal and the extent to which the Address-Sharing Policy's "contours" must be "ascertained" for purposes of preliminary relief, the Court determines that it would prefer to decide the issue only if the court of appeals thinks it would be useful to deciding Defendants' appeal. Fed. R. Civ. P. 62.1 advisory committee notes.

## IV. CONCLUSION

The Romo Declaration is a significant development in this case. Not only does it confirm the Court's finding that the IRS violated IRC Section 6103(i)(2) by disclosing thousands of confidential taxpayer addresses to ICE without first determining that ICE's request included the "address of the taxpayer," but it reveals that the IRS provided confidential taxpayer addresses to

ICE in response to requests from ICE that the IRS now admits were legally deficient. The Court's prior decision to indicate that it would supplement the record on appeal with the Romo Declaration reflects the significance of this new information.

Plaintiffs' request for discovery, however, raises additional considerations. For one, Plaintiffs seek discovery for the limited purpose of supplementing the record on appeal. For another, discovery tends to take time, no matter how expedited. And for good measure, Plaintiffs' request raises difficult legal issues. These considerations lead the Court to conclude that Plaintiffs' request for discovery raises a substantial issue that it would prefer to decide only if the court of appeals agrees that it would be useful to its decision on Defendants' appeal.

Accordingly, for the foregoing reasons, the Court hereby:

**INDICATES THAT**, if it had jurisdiction, it would supplement the record on appeal with the [66] Supplemental Declaration of Dottie A. Romo; the Court further

**INDICATES THAT** Plaintiffs' request for discovery raises a substantial issue that the Court would prefer to decide only if the court of appeals agrees that it would be useful to its decision on Defendants' appeal.

**SO ORDERED.**

Dated: February 26, 2026

*/s/ Colleen Kollar-Kotelly*
COLLEEN KOLLAR-KOTELLY
United States District Judge