[NOT YET SCHEDULED FOR ORAL ARGUMENT]

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CENTER FOR TAXPAYER RIGHTS, et al., <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> INTERNAL REVENUE SERVICE, et al., <br><br> Defendants-Appellants. | Case No. 26-5006 |

## MOTION FOR LIMITED REMAND

Pursuant to Federal Rules of Appellate Procedure 12.1 and 27, plaintiffs-appellees Center for Taxpayer Rights et al. (collectively, Plaintiffs) respectfully move for a limited remand to the district court. During the pendency of this appeal, significant new facts have come to light that, at a minimum, call into doubt the sufficiency of the administrative record in this case. Recognizing the significance of these developments, the district court has issued an indicative ruling stating that, if this Court remanded this case for a limited purpose, the district court would (1) allow the parties to supplement the record on appeal

with a new declaration filed by defendants-appellants the Internal Revenue Service et al. (collectively, the IRS or Defendants), and (2) consider further Plaintiffs' request for discovery, which raises a "substantial issue." Plaintiffs request that the Court remand for those purposes, as authorized by Rule 12.1(b). This motion is opposed.

**1.** The background regarding this case is set forth in Plaintiffs' pending motion to stay appellate proceedings. We recount here only those facts particularly pertinent to the request for a limited remand.

Plaintiffs brought this case challenging changes in IRS's policies and practices regarding how it shares taxpayers' sensitive and confidential information. *See* Dkt. No. 20 (operative complaint).[1] Such information is by statute protected from disclosure except in carefully delineated circumstances, 26 U.S.C. § 6103, and the IRS has for decades maintained detailed privacy protocols limiting access to sensitive information.

In 2025, the IRS abruptly abandoned those longstanding commitments and adopted a new data-access policy that broadly

---

[1] Citations to the docket refer to the district court docket, No. 25-cv-457 (D.D.C.).

2

permitted sharing sensitive taxpayer data outside the agency. The IRS executed a memorandum of understanding with Immigration and Customs Enforcement (ICE) that set forth a process by which the IRS planned to share taxpayer data with ICE, including taxpayers' last-known addresses. Dkt. No. 30-6. In July and August 2025, the IRS processed ICE's mass request for the last-known addresses of 1.2 million taxpayers, sharing address information for approximately 47,000 individuals. Dkt. No. 54, at 10. Plaintiffs promptly sought preliminary relief in the form of a stay under 5 U.S.C. § 705 or, in the alternative, a preliminary injunction. Dkt. No. 30.

**2.** The district court granted Plaintiffs' motion for preliminary relief. Dkt. Nos. 53, 54. The court concluded that Plaintiffs sufficiently demonstrated organizational and associational standing; that the IRS had adopted an address-sharing policy subject to APA review; that the policy was contrary to law and arbitrary and capricious; and that plaintiffs were suffering irreparable harm. *See generally* Dkt. No. 54. As a remedy, the court entered "a stay that enjoins further unlawful data transfers, accompanied by requirements to notify the Court of planned future transfers and to notify ICE of the Court's holdings." *Id.* at 90

(formatting altered); *see* Dkt. No. 53 (order). Five weeks later, the IRS noticed this appeal. Dkt. No. 59; *see also* Dkt. No. 61 (amended notice of appeal).

    **3.** During the pendency of this appeal, the IRS filed a "notice" on the district court docket with an attached "supplemental declaration." Dkt. No. 66. The IRS offered this declaration by Dottie A. Romo, the agency's Chief Risk and Control Officer, "to modify certain prior statements made by Defendants in this case." Dkt. No. 66-1, at ¶ 3. Although IRS did not specifically identify the statements that required modification, "the import of the Romo Declaration is clear": IRS "violated the [Internal Revenue Code] in at least one respect by disclosing confidential taxpayer addresses to ICE in response to requests from ICE that were either legally 'incomplete or insufficient[].'" Dkt. No. 74, at 4 (quoting Dkt. No. 66-1, at ¶ 13). As the district court explained, the Romo Declaration reveals that under IRS's process for disclosing taxpayer addresses, "ICE could have submitted a request with an 'address' like 'Don't Care 12345,' or, '00000,' and still received a taxpayer's address" back from IRS. *Id.* at 7.

These disclosures go the heart of how the IRS's address-sharing policy actually operates. Plaintiffs therefore promptly sought an indicative ruling that, if the district court had jurisdiction, it would (1) supplement the record to include the Romo Declaration and (2) authorize targeted, expedited discovery to complete the administrative record. *See* Dkt. No. 69. Plaintiffs explained that the discovery sought was carefully calibrated "to uncover the true contours of Defendants' Address-Sharing Policy, and to ensure that [the district court] and the court of appeals have the opportunity to consider an accurate and complete record." Dkt. No. 72, at 1.

**4.** The district court entered an indicative ruling stating that, if this Court remanded for a limited purpose, the court would supplement the record to include the Romo Declaration, given the "significance of this new information." Dkt. No. 74, at 13; *see also* Minute Order (Feb. 13, 2026). The court observed that the Romo Declaration reveals that "the IRS violated the [Internal Revenue Code] approximately 42,695 times" by disclosing taxpayer addresses "without confirming that ICE's request set forth the 'address of the taxpayer with respect to whom the requested return information relate[d].'" Dkt. No. 74, at 5 (quoting 26

5

U.S.C. § 6103(i)(2)(B)(i)). That fact is plainly relevant to the appeal concerning the nature, operation, and legality of the IRS's policy.

The district court further indicated that Plaintiffs' motion for discovery "raises a substantial issue." *Id.* at 13. The court noted the presumption against discovery in APA cases. *Id.* at 10–11. But it concluded that "Plaintiffs have raised a genuine question as to whether an exception to this general rule should apply," either because the administrative record is incomplete or because Defendants have engaged in bad faith or improper behavior. *Id.* The district court indicated that it would prefer to resolve that question only if this Court "agrees that it would be useful." *Id.* at 13.

**5.** The district court's decision on Plaintiffs' motion for discovery would aid the proper resolution of this appeal, so this Court should remand. At a fundamental level, effective judicial review requires a court "to ascertain the contours of the precise policy at issue." *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (quoting *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 928 (D.C. Cir. 2008)). Consequently, this Court has remanded—and held that a district court "is free to exercise its discretion to permit further

6

discovery"—when that step is necessary to understand a policy that is not sufficiently defined by the administrative record. *Id.* Discovery is also appropriate where there is a "strong showing of bad faith or improper behavior," either of which could frustrate effective judicial review. *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019).

Here, the belatedly filed Romo Declaration "undercut[s] many of the representations made by Defendants in this litigation." Dkt. No. 74, at 11. These representations concerned the parameters of IRS's address-sharing policy, including the steps IRS took to determine whether a request for data-sharing complied with the relevant statute and memorandum of understanding. At a minimum, the fact that the IRS now disavows prior representations made by counsel necessarily "leads to some concern regarding the completeness of the administrative record." *Id.* And, as the district court wrote, the IRS's apparent reluctance to bring these problems to the court's attention until after public reporting highlighted the issue at least raises questions regarding bad faith or improper behavior. *See id.* at 11–12.

These problems bear directly on the issues IRS raises on appeal. Consider, for example, IRS's argument that the district court erred in

7

concluding that the address-sharing policy is subject to APA review. The IRS contends that its "only practice in this respect, consistent with the [memorandum of understanding], is to comply with § 6103(i)(2)'s disclosure requirements upon receipt of a compliant request." Blue Br. 38. That is false, as the new factual record makes clear. The Romo Declaration conclusively shows "that Defendants were not simply following the [memorandum of understanding]." Dkt. No. 74, at 12. That necessarily raises the "question whether they were following some other policy-defining material." *Id.* Accordingly, this Court's review would be facilitated by the district court's authorization of limited discovery necessary to understand the contours of the policy at issue in this appeal.

Or consider the IRS's argument that the agency "used the best possible matching method by utilizing unique taxpayer identification numbers . . . where they were supplied by ICE." Blue Br. 49. As the IRS now admits, such a matching process "was 'not designed to identify the additional types of data insufficiencies' the IRS has since identified," including ICE's failure to provide bona fide addresses. Dkt. No. 74, at 6–7. Discovery will help this Court decide whether, in those

8

circumstances, the IRS's true policy appropriately complied with the statutory restrictions on data-sharing. *See Centro de Trabajadores Unidos v. Bessent*, --- F.4th ---, 2026 WL 50331 (D.C. Cir. Feb. 24, 2026) (emphasizing that the address provided by the requesting agency must be "known by the requesting agency to be that 'of the taxpayer,'" and "not any random address will suffice").

The IRS has indicated that it objects to discovery principally because, in its view, discovery would not illuminate the policy challenged here; it contends that "the administrative record is crystal clear." Stay Opp'n 11. The Romo Declaration makes that position untenable. Were that true, the IRS would not have made repeated misrepresentations to the district court regarding the policy. At a minimum, the district court is clearly correct to have "concern regarding the completeness of the administrative record." Dkt. No. 74, at 11–12. That concern should be resolved before this appeal progresses further.

**6.** The recent decision in *Centro de Trabajadores Unidos* further counsels in favor of a limited remand. There, the Court affirmed a district court's May 2025 order declining to preliminarily enjoin the memorandum of understanding between the IRS and ICE, which was

9

entered months before any sharing with ICE occurred. *See* 2026 WL 50331, at *1. But the opinion carefully noted that its review was based "on the sparse record" available, and the Court did "not opine on the legality of any actions taken by IRS or [the Department of Homeland Security] after they finalized" the memorandum of understanding. *Id.* at *2. In that vein, the Court specifically contrasted *Centro*—which concerned a facial challenge to the memorandum of understanding—with this case, where the district court considered the IRS's address-sharing policy as it worked in reality. *See id.* at *5 (stating that the district court "analyzed the [memorandum of understanding] as it was applied").

In discussing the interpretation of § 6013, the Court stated that it had no occasion to address the issues raised by the IRS's new disclosures. Because *Centro* involved "only a facial challenge" to the memorandum of understanding, the issues raised by the Romo Declaration were "not before this court *in [that] case.*" *Id.* at *8 (emphasis added). But those issues are squarely raised here, where the preliminary relief on appeal explicitly concerns how the IRS's address-sharing policy functioned, including whether and how it operationalized

10

the memorandum of understanding. *See id.* at *5. As the district court's indicative ruling states, the "Romo Declaration shows . . . that Defendants were not simply following the [memorandum of understanding]." Dkt. No. 74, at 12. It is therefore imperative to understand the contours of Defendants' real address-sharing policy.

To ensure effective judicial review of IRS's actual policies—and to avoid a scenario in which this Court renders an advisory opinion premised on outdated and inaccurate factual record—this Court should remand for the limited purposes identified by the district court.

**7.** Undersigned counsel conferred with counsel for the IRS, who stated that the IRS opposes this motion.

* * *

For the foregoing reasons, this Court should order that the case be remanded pursuant to Federal Rule of Appellate Procedure 12.1(b).

Date: March 2, 2026

Respectfully submitted,

*/s/ Simon C. Brewer*
Simon C. Brewer
Daniel A. McGrath
Madeline H. Gitomer
Steven Y. Bressler
Robin F. Thurston

Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
sbrewer@democracyforward.org

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1977 words, according to the count of Microsoft Word, and the typeface and typestyle requirements of Federal Rule 32(a)(5)-(6) because it was prepared in 14-point Century Schoolbook, a proportionally spaced font.

March 2, 2026                                                  */s/ Simon C. Brewer*
                                                                                Simon C. Brewer