[NOT YET SCHEDULED FOR ORAL ARGUMENT]

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CENTER FOR TAXPAYER RIGHTS, et al., <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> INTERNAL REVENUE SERVICE, et al., <br><br> Defendants-Appellants. | Case No. 26-5006 |

## PLAINTIFF-APPELLEES' REPLY IN SUPPORT OF MOTION FOR LIMITED REMAND

While this appeal was pending, the government filed an extraordinary document on the district court docket. That declaration admitted that the government had furnished false statements to the district court about the very policy that is the subject of this appeal. And, as the district court explained, the declaration discloses that the Internal Revenue Service (IRS) violated the statute generally prohibiting the disclosure of taxpayers' information more than 40,000 times. Dkt. No. 74, at 5.

In light of those remarkable developments, Plaintiffs sought and obtained an indicative ruling from the district court that the record on appeal should be supplemented and that Plaintiffs' request for discovery raises a "substantial issue." Once that ruling issued, Plaintiffs—proceeding as Federal Rule of Appellate Procedure 12.1 expressly contemplates—sought a limited remand so that the district court could exercise jurisdiction over those issues. The committee notes to Rule 12.1 explicitly cite "newly discovered evidence" as a circumstance in which a court of appeals may wish to remand.

This motion should not have been controversial. After all, "the Government should turn square corners in dealing with the people." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020) (citation omitted). Having brought its misstatements to the district court's attention, as required by the rules of candor, the IRS should have recognized that the proper and orderly course would be for this case to return to the district court for the limited purpose of correcting the record on appeal. That way, this Court could conduct its appellate review based on an accurate and complete record.

Instead, the IRS insists on plowing forward. It offers four arguments against remand. They are meritless.

**1.** First, the government attempts to cast these developments as irrelevant to the issues presented on appeal. Opp'n 12-16. That is plainly wrong. At a basic level, judicial review of agency action requires understanding the scope and nature of the policy under review. Here, that is the address-sharing policy under which the IRS provided confidential information to Immigration and Customs Enforcement (ICE). Discovery is therefore relevant and entirely proper to facilitate effective judicial review. *See* Mot. 6-9.

The IRS maintains that the address-sharing policy required ICE to supply addresses as part of its data requests, and that the new declaration merely discloses an "inadvertent[] misappli[cation]" of the IRS policy. Opp'n 14. This is mere *ipse dixit*, and Plaintiffs should not be forced to accept the IRS's self-serving characterization at face value. The IRS concedes it processed a data request that did *not* contain taxpayers' addresses for thousands of individuals—in blatant violation of 26 U.S.C. § 6103(i)(2)(B). As we have explained, that demonstrates that the IRS did not merely follow the memorandum of understanding

3

(*contra* Opp'n 14), and raises the question whether it was instead "following some other policy-defining material." Dkt. No. 74, at 12. Discovery is appropriate to ascertain that fact, which will necessarily inform the scope of this Court's review. It is hard to see how that fact would not be central to an appeal concerning the existence and legality of the IRS's policy. *See* Blue Br. 37-39 (questioning the existence of the policy); *id.* 45-59 (asserting the legality of the policy).

Moreover, the IRS's reliance (at 15-16) on *Centro de Trabajadores Unidos v. Bessent*, --- F.4th ---, 2026 WL 503310 (D.C. Cir. Feb. 24, 2026), is misplaced. The decision in *Centro* noted that these factual developments were not properly before the Court in that case because it concerned a facial challenge to the IRS-ICE memorandum of understanding. *See* Mot. 9-11. But this case arises in a different posture, as *Centro* observed, 2026 WL 503310, at *5, which makes it imperative to fully understand how IRS's address-sharing policy actually functions. The government's argument elides this aspect of the *Centro* decision. And it also ignores that *Centro* clearly explained that "not any random address will suffice" to state a compliant request under § 6103(i)(2). 2026 WL 503310, at *8. But the IRS appears to have

4

allowed just that. Dkt. No. 74, at 7 ("ICE could have submitted a request with an 'address' like 'Don't Care 12345,' or, '00000,' and still received a taxpayer's address.").

**2.** Second, the government submits that discovery is not permissible in APA cases, such as this one. Opp'n 16-20. Plaintiffs do not, of course, dispute the general rule against discovery in APA cases. Nor did the district court. Dkt. No. 74, at 10-11. But the circumstances here warrant discovery under the exceptions to that rule this Court has previously recognized.

As our motion explained (at 6-7), a district court "is free to exercise its discretion" to authorize "discovery to ascertain the contours of the precise policy at issue." *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (quoting *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 928 (D.C. Cir. 2008); *see also id.* at 386 n.4 (observing that "external evidence" may be used "to determine whether the agency's challenged policy exists"). Here, there is substantial doubt that the administrative record accurately describes the contours of the policy at issue, and the agency itself has disputed the existence of the policy. *See* Opp'n 17 n.3 (citing Blue Br. 36-42). As a result, discovery is

5

appropriate to resolve those questions, which (as described above) will bear on the issues in this appeal.

The IRS simply ignores this authority. That is reason enough to reject the government's argument on this point.

Discovery is also permissible, however, because of "concern regarding the completeness of the administrative record." Mot. 7 (quoting Dkt. No. 74, at 11-12). The IRS attempts to address these concerns by pointing to the number of pages in the administrative record. Opp'n 18. But the relevant consideration is the *accuracy* of the record, not its length. The fact that the IRS could not correctly describe how the policy functioned based on the administrative record it compiled casts significant doubt on the accuracy of that compilation. On that score, the IRS has little to say in response.

And the IRS's apparent reluctance to correct its misstatements until they were revealed by public reporting at least raises questions about whether it has acted in good faith. Mot. 7. The IRS does not address its delay in correcting its misrepresentations to the district court. Instead, it simply leans on its earlier certification that the record is complete. Opp'n 19. That is non-responsive to the concern.

In all events, there is no need to conclusively resolve the question whether discovery is permissible. On remand, the district court can definitively decide whether discovery is warranted and, if so, its appropriate scope. These arguments are therefore properly addressed to the district court in the first instance. *See Marseille-Kliniken AG v. Republic of Equatorial Guinea*, 153 F.4th 1262, 1271 (D.C. Cir. 2025) (observing that this is "a court of review, not of first view").

**3.** Third, the government submits that it will be irreparably harmed by a limited remand because it will delay this appeal. Opp'n 20-21. Such assertions are particularly difficult to credit in light of the IRS's delay in noticing an appeal. *Cf. Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1318 (1983) (Blackmun, J., in chambers) ("[T]he Administrator's failure to act with greater dispatch tends to blunt his claim of urgency . . . ."). The government does not ordinarily wait five weeks to notice an appeal, and then decline to seek a stay pending appeal, when it regards a district court's order as presenting a genuine emergency. And any delay could have been minimized if the IRS had disclosed this new information promptly, instead of waiting weeks to file its new declaration with the district court. *See* Stay Mot. 4-5

(describing how the government waited at least 19 days to notify the district court). Ultimately, the IRS itself is responsible for any delay. In these circumstances, "speed in adjudication must to some extent yield to quality of adjudication." *Gomez v. Wilson*, 477 F.2d 411, 417 (D.C. Cir. 1973).

In any event, the government's argument fails on its own terms. The IRS first suggests that it is harmed because the injunction prevents it from "effectuating statutes enacted by representatives of its people." Opp'n 20 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). That assertion is immediately belied by the IRS's complaint that "the order is essentially a 'follow-the-law' injunction." *Id.* The government makes no effort to reconcile these inconsistent positions. And, as the district court's thorough analysis makes clear, the IRS "is *not*, in fact, 'effectuating the statute enacted by representatives of its people' because it is not giving effect to the statute's" limitations on data-sharing. *Make the Rd. N.Y. v. Noem*, 2025 WL 3563313, at *32 (D.C. Cir. Nov. 22, 2025) (statement of Millett and Childs, JJ.) (alterations omitted). The district court's order in no way

prevents the IRS from carrying out its statutory obligations; rather, it ensures that the IRS complies with them.

To the extent that the government complains about the requirement to notify the district court of future data-sharing requests, it fails to substantiate any harm. Since the district court entered its order three months ago, IRS has filed two such notices under seal. *See* Dkt. Nos. 67, 71. Neither notice contains any confidential information, and the government itself indicated that it saw no reason to maintain the seal. *Id.* Given that position, it is difficult to understand how filing such notices could be "harmful" to any "criminal investigatory activity." Opp'n 21.

**4.** Finally, the IRS suggests that any decision regarding remand should be deferred to the merits panel. Opp'n 21-23. Far from promoting judicial efficiency, that approach would essentially invite "piecemeal appeals." *Microsoft Corp. v. Baker*, 582 U.S. 23, 37 (2017). The merits panel would be needlessly forced to consider the appeal twice over: once based on the current (inaccurate) record and then, should it conclude remand is warranted, yet again the issues in light of the corrected record. It would be more efficient to remand now, permit

9

the district court to take appropriate action based on its indicative ruling, and then allow the appeal to resume in this Court based on a complete and accurate record. That will spare the Court and the parties from the kind of fractured appellate review that is ordinarily disfavored, and it will avoid any scenario in which this Court would be asked to render an advisory opinion based on a demonstrably inaccurate factual record. *See* Mot. 11.

* * *

For the foregoing reasons, this Court should grant Plaintiffs' motion and order that the case be remanded pursuant to Rule 12.1(b).

Date: March 13, 2026

Respectfully submitted,

<u>*/s/ Simon C. Brewer*</u>
Simon C. Brewer
Daniel A. McGrath
Madeline H. Gitomer
Steven Y. Bressler
Robin F. Thurston

Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
sbrewer@democracyforward.org

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply in support of a motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 1773 words, according to the count of Microsoft Word, and the typeface and typestyle requirements of Federal Rule 32(a)(5)-(6) because it was prepared in 14-point Century Schoolbook, a proportionally spaced font.


March 13, 2026                                         */s/ Simon C. Brewer*
                                                       Simon C. Brewer