ORAL ARGUMENT NOT YET SCHEDULED
No. 26-5006

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CENTER FOR TAXPAYERS RIGHTS, *et al.*,
    *Plaintiffs-Appellees*,

v.

INTERNAL REVENUE SERVICE, *et al.*,
    *Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Columbia

BRIEF OF *AMICUS CURIAE*
FEDERATION FOR AMERICAN IMMIGRATION REFORM
IN SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL

CHRISTOPHER J. HAJEC
MATT A. CRAPO
EDWIN E. PIETERS
 Federation for American Immigration Reform
25 Massachusetts Ave. NW STE. 330
Washington, DC 20001
chajec@fairus.org
(202) 328-7004

Attorney for *Amicus Curiae*
Federation for American Immigration Reform

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Cir. R. 28(a)(1), the undersigned counsel certifies as follows:

**A. Parties and *Amici***

The parties, intervenors, and *amici* appearing before the district court, and in this Court, are listed in the Brief for the Appellants, with the addition of this brief by the Federation for American Immigration Reform (FAIR).

**B. Rulings Under Review.**

The ruling under review is available at *Ctr. for Taxpayer Rts. v. IRS*, 2025 U.S. Dist. LEXIS 229803 (D.D.C. Nov. 21, 2025).

**C. Related Cases.**

The appealed decision has not previously been before this Court or any other court. *Centro de Trabajadores Unidos v. Bessent*, No. 25-5181 (D.C. Cir.) (decided Feb. 24, 2026), an appeal currently pending before this Court, involves similar issues relating to the IRS-DHS data-sharing memorandum of understanding.

Dated: February 24, 2026         <u>/s/ Christopher J. Hajec</u>

# CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* Federation for American Immigration Reform is a non-profit corporation that has no parent corporations, and no publicly held corporation owns 10% or more of any of its stock.

Dated:  February 24, 2026           /s/ Christopher J. Hajec

**TABLE OF CONTENTS**

Page

Certificate as to Parties, Rulings, and Related Cases ..................................i

Corporate Disclosure Statement ................................................................. ii

Table of Authorities ....................................................................................iv

Glossary..................................................................................................... vii

Identity, Interest and Authority to File ........................................................1

Summary of Argument ................................................................................1

Argument......................................................................................................2

    I.       The District Court failed to account for the negative equities (or unclean hands) of any potential Plaintiff with standing.............................3

    II.      Because the equities, properly weighed, preclude the injunction granted below, this Court should reverse ...................................................7

Conclusion ...................................................................................................9

Certificate Of Compliance

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Pages**

*Combs v. Snyder*,
   101 F. Supp. 531 (D.D.C. 1951), *aff'd*, 342 U.S. 939 (1952)...............................6

*Frank Adam Elec. Co. v. Westinghouse Elec. & Mfg. Co.*,
   146 F.2d 165 (8th Cir. 1945) ........................................................................4

*Johnson v. Yellow Cab Transit Co.*,
   321 U.S. 383 (1944).....................................................................................4

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945).........................................................................2, 4, 5, 6

*Sherley v. Sebelius*, 644 F.3d 388 (D.C. Cir. 2011).................................................7

*Shondel v. McDermott*,
   775 F.2d 859 (7th Cir. 1985) ........................................................................4

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008).....................................................................................7, 8

**Statutes**

8 U.S.C. § 1253 ..............................................................................................2, 3

**Other Authorities**

FED. R. APP. P. 29(a)(4)(E) .................................................................................1

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| App. Br. | Brief for Appellants (or Appellants' Brief) |
| DHS | Department of Homeland Security |
| FAIR | Federation for American Immigration Reform |
| ICE | U.S. Immigration and Customs Enforcement |
| INA | Immigration and Nationality Act |
| IRS | Internal Revenue Service |
| MOU | Memorandum of Understanding between the IRS in the Treasury Department and DHS |

# IDENTITY, INTEREST AND AUTHORITY TO FILE[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to advocate for immigration policy that is in America's best interest. FAIR has been involved in more than 100 legal cases since 1980, either as a party or *amicus curiae*, with the aim of advancing this mission.

The decision in this case will likely have a national impact on the tools available to the executive branch of the federal government in dealing efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people in the United States. *Amicus* FAIR has direct and vital interests in defending the executive branch's authority to address the current illegal alien crisis.

# SUMMARY OF ARGUMENT

Plaintiffs challenge a Memorandum of Understanding (MOU) between Defendants Department of Homeland Security (DHS) and the Internal Revenue

---

[1] All parties have consented to the filing of this *amicus* brief. Pursuant to FED. R. APP. P. 29(a)(4)(E), undersigned counsel certifies that: no counsel for a party authored this brief in any respect; and no party, party's counsel, person or entity – other than *Amicus*, its members, and its counsel – contributed monetarily to this brief's preparation or submission.

1

Service (IRS), which expressly states that its purpose is to "take immediate steps to identify, exclude, or remove aliens illegally present in the United States." Appendix, Vol. I, A358 (MOU ¶1.a) The entire focus of Defendants' actions is therefore on locating individuals who are violating federal criminal law by remaining illegally in the United States after being order removed.

The district court's preliminary injunction should be vacated because it violates the fundamental equitable maxim that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). By enjoining the IRS from sharing address information with immigration enforcement officials, the district court facilitated illegal activity and prevented immigration officers from carrying out their lawful duties to apprehend illegal aliens who have received removal orders and yet remain in the country in violation of 8 U.S.C. § 1253.

The district court also balanced the equities and determined the public interest improperly, finding weight in the "informational privacy" of those violating the law while ignoring the Executive's obligation to enforce the law at a time of national crisis.

**ARGUMENT**

The government demonstrates that Plaintiffs have failed to show a likelihood of either organizational or associational standing. Appellants' Brief (App. Br.) at

22-36. In particular, Plaintiffs' failure to identify any member who would be injured by the information-sharing MOU defeats their claim of associational standing. App. Br. at 29-32. But even if Plaintiffs could identify such a member and demonstrate that member would likely be harmed by the MOU, the district court's preliminary injunction would run afoul of the unclean hands doctrine and improperly interfere with federal law enforcement involving illegal aliens who have outstanding final removal orders but have refused to depart the United States in violation of 8 U.S.C. § 1253(a)(1) (setting forth the criminal penalties for failure to depart).

The data-sharing MOU permits the IRS to share taxpayers' identifying information with DHS to facilitate investigation of those who violate federal criminal law. A358 (MOU, ¶1.e) (permitting Immigration and Customs Enforcement (ICE) to request addresses for "persons subject to criminal investigation under 8 U.S.C. § 1253(a)(1) or another specifically designated Federal criminal statute"). DHS has reasonably determined that this information would assist it in locating and removing those illegal aliens who, by their continued presence in the United States, are violating federal criminal law.

**I. The District Court failed to account for the negative equities (or unclean hands) of any potential Plaintiff with standing.**

U.S. Immigration and Customs Enforcement (ICE) requested the addresses of approximately 1.28 million aliens with outstanding removal orders. App. Br. at

3

55. Thus, the potential disclosure of IRS data was limited to those individuals who had been ordered removed from the United States. The district court failed to recognize that Plaintiffs' requested relief would protect the illegal presence of such individuals, contrary to the "equitable maxim that he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (inner quotations omitted). In *Precision Instrument*, the Supreme Court explained:

> This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be the abettor of iniquity.

*Id.* (quotation omitted).

"An obviously sensible application of this principle is to withhold an equitable remedy that would encourage, or reward (and thereby encourage), illegal activity, as where the injunction would aid in consummating a crime …." *Shondel v. McDermott*, 775 F.2d 859, 868 (7th Cir. 1985) (citing *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383 (1944)). As the Seventh Circuit elaborated, "[a] common modern application of 'unclean hands' is to intellectual-property cases in which an injunction is sought in aid of unlawful activity," and it is refused "on the ground that awarding it would assist in a violation of the antitrust laws." *Id.* (citing *Frank*

4

*Adam Elec. Co. v. Westinghouse Elec. & Mfg. Co.*, 146 F.2d 165 (8th Cir. 1945)). Motions for injunctions that would protect misrepresentation are likewise denied based on unclean hands by the movant. *Id.*

When a plaintiff—or, in this lawsuit, purported members of a plaintiff—are seeking equitable relief that would aid an ongoing violation of federal law, the doctrine of unclean hands precludes the request. The Supreme Court has emphasized that this is not a relative test comparing wrongdoing by a plaintiff against wrongdoing by a defendant, but rather is a requirement that the plaintiff be clean of improper related conduct regardless of how unclean the defendant may be:

> [Plaintiff] Automotive has not displayed that standard of conduct requisite to the maintenance of this suit in equity. That the actions of [Defendants] may have been more reprehensible is immaterial. The public policy against the assertion and enforcement of patent claims infected with fraud and perjury is too great to be overridden by such a consideration. [Plaintiff] Automotive knew of and suspected the perjury and failed to act so as to uproot it and destroy its effects. Instead, Automotive acted affirmatively to magnify and increase those effects. Such inequitable conduct impregnated Automotive's entire cause of action and justified dismissal by resorting to the unclean hands doctrine.

*Precision Instrument*, 324 U.S. at 819.

In essence, the district court granted a preliminary injunction here against an inter-agency data-sharing agreement so that purported members of Plaintiff organizations can remain illegally in the United States without being located by immigration law enforcement. In other words, the requested preliminary injunction would aid in the continued illegal presence of individuals in this country. By

5

granting Plaintiffs' request for equitable relief, despite their continuing wrongdoing, the district court assisted in that wrongdoing—the avoidance of such assistance being a signal reason for the doctrine of unclean hands. And because the test for a preliminary injunction includes balancing the equities as one of its factors, it does not matter if the Defendants assert or argue unclean hands doctrine as a defense. *See, e.g.*, *Combs v. Snyder*, 101 F. Supp. 531, 532 (D.D.C. 1951), *aff'd*, 342 U.S. 939 (1952) (denying a motion for a preliminary injunction because "[n]othing is better settled than that it is within the discretion of a court of equity to deny its aid to one who does not come into court with clean hands. Few things are clearer than that one who comes seeking protection for conduct that he concedes to be criminal has unclean hands within the meaning of this principle.").

The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument*, 324 U.S. at 814. Here, the "matter" is a means of enforcing the Immigration and Nationality Act (INA). A plaintiff who is in open and ongoing violation of the INA cannot invoke the judicial power to suppress the very data needed to rectify that violation.

Thus, the unclean hands doctrine should have barred the Plaintiffs' requested preliminary injunction, and the district court should have denied them that equitable relief.

## II. Because the equities, properly weighed, preclude the injunction granted below, this Court should reverse.

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In *Sherley*, the D.C. Circuit reweighed the equities and vacated the preliminary injunction granted by the district court. *Id.* at 398-99 (noting that the district court determined that a preliminary injunction "would simply preserve the *status quo*," before stating, "[a]s we see it, however, a preliminary injunction would in fact upend the status quo"). Because the balance of equities, as determined by the appellate court, tilted against granting a preliminary injunction, "combined with our conclusion the plaintiffs have not shown they are likely to succeed on the merits, leads us to hold the district court abused its discretion in awarding preliminary injunctive relief." *Id.* at 399.

Here, the equities tilt strongly against a preliminary injunction. To begin with, the district court's order provides aliens who remain in the United States in violation of the law with a "judicial safe harbor" that insulates them from the legal consequences of their unlawful presence. By preventing the IRS from communicating with ICE, the district court has effectively granted Plaintiffs a form of equitable amnesty that Congress has not authorized. This creates a perverse

7

incentive structure where those in violation of federal law receive more protection from a court of equity than those who comply with it.

In balancing the equities, this Court should consider not only this perverse incentive structure, but whether the injunction harms the public interest in national security and border integrity. *See Winter*, 555 U.S. at 20 (permitting preliminary injunctions only where the balance of equities tips in the movant's favor and where an injunction is in the public interest). The number of aliens remaining in the United States in violation of an outstanding removal order is extremely high, as ICE's request for information relating to 1.28 million aliens with outstanding removal orders attests. In addition, an estimated population of over 18 million people are currently present in the United States unlawfully.

> As of March 2025, FAIR estimates that approximately 18.6 million illegal aliens reside in the United States. This is 11 percent higher than our June 2023 illegal alien population estimate of 16.8 million. Since our December 2020 estimate, the illegal alien population in the United States has grown by 4.1 million. The surge in illegal immigration was so large that the U.S. Census Bureau announced just three months ago it has changed its methodology for estimating the foreign-born population to account for it.

FAIR, "How Many Illegal Aliens Are in the United States? 2025 Update" (March 7, 2025) (footnote omitted).[2]

---

[2] Available at: https://www.fairus.org/issue/how-many-illegal-aliens-are-united-states-2025-update (last viewed Feb. 22, 2026).

In this context, amounting to an acute crisis, the interest in "taxpayer privacy" for aliens who remain in the United States after being ordered removed is greatly outweighed by the Executive's interest in faithfully enforcing the nation's immigration laws. This is especially so when plaintiffs lack any right to continue the conduct they seek "privacy" to shield. Simply put, the district court turned the equities upside down when it granted a preliminary injunction.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's November 21, 2025, order and vacate the preliminary injunction.

Dated: February 24, 2026        Respectfully Submitted,

/s/ Christopher J. Hajec
CHRISTOPHER J. HAJEC
MATT A. CRAPO
EDWIN E. PIETERS
Federation for American Immigration Reform
25 Massachusetts Ave. NW STE. 330
Washington, DC 20001
chajec@fairus.org
(202) 328-7004

Attorney for *Amicus Curiae*
Federation for American Immigration Reform

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Times New Roman 14-point, proportionately spaced, serif typeface, in Microsoft Word.

2. This brief complies with Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i) because it contains a total of 2,030 words, excluding material not counted under Rule 32(f).

Dated: February 24, 2026          Respectfully Submitted,

                                               /s/ Christopher J. Hajec